IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM PATRICK O'CONNOR,

Plaintiff,

v.                                              Civil Action No. 2:10-cv-115

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.


**REPORT AND RECOMMENDATION CLAIMANT'S MOTION FOR SUMMARY
JUDGMENT BE DENIED AND COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT BE GRANTED**

## I. Introduction

A.      Background

        Plaintiff, William Patrick O'Connor, (hereinafter "Claimant"), filed his Complaint on

October 5, 2010, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision

by Defendant, Commissioner of Social Security, (hereinafter "Commissioner").[1]  Commissioner

filed his Answer on January 3, 2011.[2]  Claimant filed his Motion for Summary Judgment on

February 2, 2011.[3]  Commissioner filed his Motion for Summary Judgment on March 4, 2011.[4]

B.      The Pleadings

        1.      Plaintiff's Memorandum in Support of Motion for Summary Judgment.

        2.      Defendant's Brief in Support of His Motion for Summary Judgment.

_____

        [1] Dkt. No. 1.

        [2] Dkt. No. 11.

        [3] Dkt. No. 14.

        [4] Dkt. No. 16.

C.    Recommendation

For the following reasons, I recommend that:

1.    Claimant's Motion for Summary Judgment be **<u>DENIED</u>** because the Appeals Council has no affirmative duty to articulate its own assessment of Claimant's additionally submitted evidence, the ALJ's credibility determination was supported by substantial evidence and affording controlling weight to Claimant's treating physician's opinion was inappropriate given the existence of substantial contrary evidence in the case record.

2.    Commissioner's Motion for Summary Judgment be **<u>GRANTED</u>** for the same reasons.

## II.  Facts

A.    Procedural History

Claimant filed an application for Disability Insurance Benefits ("DIB") on March 28, 2007 alleging disability due to lower back problems with an onset date of March 1, 2006. (Tr. 56, 100).  In a pre-hearing memorandum, Claimant alleged he was disabled due to severe chronic back pain and loss of motion, groin pain and neuropathy in the thighs and down both legs into both feet.  The application was initially denied on July 12, 2007, and on reconsideration on September 27, 2007. (Tr. 56-60, 67).  Claimant requested a hearing before an Administrative Law Judge (hereinafter "ALJ") on November 19, 2007, and received a hearing on February 9, 2009 before the ALJ in Cumberland, Maryland. (Tr. 31-53, 70).  Claimant was represented by counsel at the hearing.

On March 20, 2009, the ALJ issued a decision adverse to Claimant finding that Claimant

did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404.1525 and 404.1526. (Tr. 23). Claimant requested review of the ALJ's decision by the Appeals Council on April 30, 2010, but such review was denied on August 7, 2010. (Tr. 9, 16). Claimant filed this action, which proceeded as set forth above, having exhausted his administrative remedies.

B.    Personal History

Claimant was born on May 27, 1960, and was forty-five (45) years old on the onset date of the alleged disability and forty-eight (48) years old as of the date of the ALJ's decision. (Tr. 100). Under the regulations, Claimant was considered a "younger individual" aged 45-49, and generally, one whose age will not "seriously affect [Claimant's] ability to adjust to other work." 20 C.F.R. §§ 404.15639(c), 416.963(c). Claimant highest grade of school completed was the 10th grade. (Tr. 133). Claimant has prior work experience as a vice president, shop foreman and quality control manager in a custom kitchen equipment business. (Tr. 148).

C.    Medical History

The following medical history is relevant to the issues of whether substantial evidence supports the ALJ's finding that the Claimant could perform a range of work at the light exertional level.

In an initial consultation of Claimant at MIR Neurology, Dr. Dennis Dey examined Claimant. Dr. Dey opined that Claimant's pain is in the distribution of the ilioinguinal nerve but that the findings on Claimant's lumbar spine MRI did not explain the patient's symptoms. (Tr. 204). Upon physical examination, Claimant was in moderate distress due to Claimant's bilateral groin pain. (Tr. 204).

In office treatment records from MIR Neurology dated April 22, 2005, Claimant stated that a bilateral ilioinguinal and iliohypogastric nerve block worked great for his groin and testicular pain, but subsided after approximately two weeks. (Tr. 200). Claimant rated his bilateral groin pain as an 8-9/10 but there was no new weakness or numbness. (Tr. 200). Claimant's physical examination revealed mild distress due to Claimant's groin pain but that motor examination showed full strength proximally and distally over the arms and legs bilaterally. (Tr. 200).

In an April 28, 2005 MRI of Claimant's pelvis, the findings were as follows: "There is a dilatation of the inguinal rings bilaterally...[which] contain areas of bright signal intensity and mild contrast enhancement, indicating mild edematous changes, with trapping of loops of bowel demonstrated." (Tr. 208). "No other focal abnormality demonstrated." (Tr. 209).

In office treatment records from MIR Neurology dated May 19, 2005, Claimant stated his pain was better and that staying off of his feet helped him a lot. (Tr. 198). Claimant indicated that the pain in his groin was almost gone and that he did have low back pain, however, it occasionally radiates towards the back of his legs. (Tr. 198). Claimant's physical examination determined lateral and retroflexion of the lumbar spine was not necessarily painful and that hip internal and external rotation, as well as Patrick's test, were not painful. (Tr. 198). On May 20, 2005, Claimant returned for an epidural steroid injection and indicated his pain was unchanged. (Tr. 197).

In office treatment records of Claimant from MIR Neurology dated December 12, 2005, Claimant's physical examination of the musculoskeletal area determined Claimant had pain over the midline spine, which worsened with lumbar flexion and was slightly worse with extension.

Claimant reported, at times, the pain also radiates towards his upper thigh and groin. (Tr. 195). Claimant was diagnosed with lumbar discogenic pain, on the basis of degenerative disc disease at L4-L5 and L5-S1, with referred pain to the thigh and groin. (Tr. 196).

MIR Neurology office treatment records dated January 5, 2006, indicated a bilateral transforaminal epidural steroid injection at left L5-S1 and right L4-5 under fluoroscopy was performed on Claimant on January 5, 2006. (Tr. 193). Claimant's impression was as follows: 1) lumbar discogenic pain, on the basis of degenerative disc disease at L4-5 and L5-S1, with referred pain to the thigh and groin.(Tr. 193).

MIR Neurology office treatment records dated February 1, 2006 it was noted that Claimant had pain on midline lumbar compression, as well as lumbar flexion. (Tr. 190). Additionally, the medical notes indicated Claimant's straight leg raising test produces pain in the low back and there was bilateral lumbar paraspinal muscle spasms. (Tr. 190). The impression indicated "discogenic pain with improvement after epidural steroid injection. The patient did not receive lasting improvement however." (Tr. 191).

On February 8, 2006, Claimant was evaluated by the Center for Pain Management for low back pain and groin pain. (Tr. 244). Claimant stated he cannot do yard work, exercise, participate in recreational activities and socializing with friends as a result of his pain. (Tr. 244). Claimant asserted he has had no relief with physical therapy and acupuncture but moderate releif with traction, injections, heat and ice treatment and chiropractic manipulation. (Tr. 244).

The MRI of Claimant's thoracic spine dated February 16, 2006 found a "small posterior disc herniation at T6-T7." The vertebral body height and alignment, bone marrow signal and spinal cord signal were normal. (Tr. 211). There was no central canal or neural foraminal

stenosis found. (Tr. 211).

The MRI of Claimant's Lumbar spine dated February 16, 2006 found "vertebral body height, alignment, and marrow signal" to be normal. (Tr. 212). A small posterior disc herniation at L4-L5 was found to be slightly smaller than on the prior examination and there were no findings of neural impingement. (Tr. 212). The stated impression indicated "improving disc herniation at L4-L5 and new small disc herniation at L5-S1, without findings of neural impingement." (Tr. 212).

On May 9, 2006, Claimant presented at the Center for Pain Management for a follow-up visit. Claimant was reported as returning after undergoing a two-level intradiskal annuloplasty on April 25, 2006. (Tr. 249). While Claimant associated increased pain following the procedure, Claimant was improving and was scheduled to undergo aqua therapy. (Tr. 249).

On May 31, 2006, Claimant presented at the Center for Pain Management for a follow-up visit. Claimant was noted as in breach of the opiod agreement because Claimant switched from Lortab to Percocet left over from a previous prescription. (Tr. 252). Claimant, however, was noted as "improving and he is continuing aqua therapy per protocol." (Tr. 251).

On June 15, 2006, Claimant presented at the Center for Pain Management. Office treatment records from that date indicated Claimant had "improved low back pain and groin pain." (Tr. 253). In the treatment plan, Claimant's records state "[Claimant] presents today was[sic] significantly improved pain relief. [Claimant] notes decreased use of narcotics and [Claimant] has increased his activities. [Claimant] is very pleased. [Claimant] would like to return to work and [Claimant] informs me that work-related duties do not involve hard labor." (Tr. 254). Claimant "notes that light duty should not be a problem as he is a foreman and is not

involved in heavy lifting." (Tr. 254).

On August 29, 2006, Claimant presented at the Center for Pain Management. Office treatment records from that date indicate Claimant had "improved low back pain and groin pain." (Tr. 255). Claimant's history of present illness provides that on April 25, 2006, Claimant underwent a two-level annuloplasty which "provided [Claimant] with excellent relief where he did not require any oral analgesics." (Tr. 255). In the summary, it is noted that Claimant "was doing very well following the procedure until recently. He denies any aggravating events." (Tr. 256).

A neurosurgical evaluation of Claimant dated September 21, 2006 cited Claimant as suffering from degenerative disk disease at the L4-L5 and L5-S1 levels, neurogenic clauscretion and discogenic back pain. Dr. O'Malley recommended surgical fusion and noted that Claimant "certainly has failed all reasonable treatment" and that Claimant "understands there is a success rate of approximately 85%. [Claimant] understands he may or may not be able to return to his current level of employment and activity." (Tr. 216).

A CT of Claimant's lumbosacral spine, performed on September 25, 2006, resulted in the following findings: 1) normal bony alignment; 2) no evidence of fracture; 3) mild disc space narrowing at L4-L5 level; 4) prominent central disc herniation at L4-L5 level, causing bilateral lateral recess stenosis and impingement of the bilateral L5 nerve roots; 5) mild bulging annulus at L5-S1 level, also causing mild encroachment upon the bilateral S1 nerve roots. (Tr. 213). The rest of Claimant's lumbar spine was unremarkable and the visualized prevertebral and paraspinal soft tissues were within normal limits. (Tr. 213).

On September 28, 2006, Claimant underwent back surgery. Specific procedures entailed:

1) L4-L5 and L5-S1 interbody fusion; 2) placement of interbody cage L4-L5 and L5-S1; 3) Lateral technique fusion, L4 and S1; 4) placement of instrumentation L4-S1; 5) Fashion use of allograft for lateral technique fusion; 6) fashion and use of autograft for interbody and lateral technique fusion. (Tr. 217).

On January 10, 2007, Claimant presented at the Center for Pain Management complaining of low back pain and groin pain. (Tr. 257). In the recommendation and treatment plan, it is noted that Claimant was "doing very well following the procedure, but aggravated his pain after he returned to work." (Tr. 257). Claimant reported that he wanted to "proceed with repeat pidural steroid injections" and the physician agreed stating that Claimant "obtained some relief on previous injections." (Tr. 257).

On April 27, 2007, Claimant complained of low back pain and groin pain at the Center for Pain Management. Claimant stated he used a cane to assist with mobility and that his activities of daily living were globally limited, however, an MRI noted improving disc herniation at L4-5 and a new small disk herniation at L5-S1. (Tr. 243). Claimant indicated he "continues to consider applying for Social Security disability and selling his portion of the business to his brother because he cannot tolerate the pain and activity." (Tr. 243).

On June 14, 2007, Claimant received a caudal epidural steroid injection at the Center for Pain Management. (Tr. 242). Claimant indicated he could not work on a concrete surface and wanted to revert to farming and social security. (Tr. 242). Claimant stated he preferred to continue medical management of his pain through his primary care physician's office for convenience. (Tr. 242).

In a physical RFC assessment performed by Dr. Fulvio Franyutti on June 26, 2007,

Claimant's primary diagnosis was chronic low back pain and paresthesias of legs. The secondary diagnosis was s/p lumbar discectomy and fusion. (Tr. 231). Claimant's exertional limitations were as follows: 1) can occasionally lift and/or carry a maximum of 20 pounds; 2) can frequently lift and/or carry (including upward pulling) a maximum of 10 pounds; 3) can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; 5) can push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 232). Claimant's postural limitations permitted occasional climbing of ramp/stairs, ladders/rope/scaffolds, balancing, stooping, kneeling, crouching and crawling. (Tr. 233). No manipulative, visual or communicative limitations were established. (Tr. 235). Claimant's environmental limitations are as follows: 1) unlimited exposure to extreme heat, wetness, humidity, noise and fumes, odors, dusts, gases, poor ventilation; 2) avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. 235). Dr. Franyutti stated "Claimant appears to be credible, allegations appear to be supported by findings." (Tr. 236).

In a vocational analysis of Claimant, dated July 3, 2007, Claimant's exertional level was assessed at light, with restrictions. Claimant was not assessed as having mental limitations. The vocational analysis remarked Claimant's postural limitations as follows: can occasionally climb, balancing, stoop, kneel, crouch and crawl. Claimant's environmental limitations were to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. 156).

On August 17, 2007, Claimant presented at the Center for Pain Management with low back pain and groin pain. (Tr. 241). He was diagnosed with 1) L4-L5 & L5-S1 fusion; 2) lumbar spondylosis, degenerative disc disease, and facet arthropathy; 3) discogenic pain with

9

radiculopathy; 4) associated myofascial pain; 5) referred groin pain. (Tr. 241). In the summary and treatment plan, Dr. Hays determined that DiscTRODE helped and that medical management with prescription medication would continue. (Tr. 241).

In a physical RFC assessment performed by Dr. Porfirio Pascasio on September 26, 2007, Claimant's primary diagnosis was chronic low back pain s/p discetomy and the secondary diagnosis was fusion. (Tr. 262). Claimant's exertional limitations were as follows: 1) can occasionally lift and/or carry (including upward pulling) a maximum of 20 pounds; 2) can frequently lift and/or carry (including upward pulling) a maximum of 10 pounds; 3) can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; 5) can push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 263). Claimant's postural limitations are as follows: 1) can occasionally climb rampt/stairs, balance, stoop, kneel, crouch and crawl; 2) can never climb ladder/rope/scaffolds. (Tr. 264). No manipulative, visual or communicative limitations were established. (Tr. 265-66). Claimant's environmental limitations were as follows: 1) unlimited exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation; 2) avoid concentrated exposure to extreme cold and heat and hazards such a machinery or heights. (Tr. 266). Dr. Pascasio agreed with the prior evaluation that Claimant was credible. (Tr. 267).

Claimant's treating physician's medical notes and opinions are also relevant. Dr. Bess noted Claimant stated he has good and bad days but that Claimant's pain has been increasing. (Tr. 283). Claimant's flexion and extension views of Claimant's lumbar spine showed excellent alignment and no evidence of spondylolisthesis. (Tr. 285). A CT myelogram of Claimant's

lumbar spine showed postsurgical changes of laminectomies with posterior fusion at L4, L5 and S1. Excellent alignment of the lumbar spine was noted and Claimant's lumbar neural canal and neural foramina were well maintained. (Tr. 286). No evidence of intradural or epidural mass effect was noted and intact fixation rods and screws were noted. (Tr. 286). Claimant's lumbar myelogram showed an entirely normal appearing lumbar thecal sac. (Tr. 287). Claimant's nerve roots were well demonstrated and appeared unremarkable. (Tr. 287). There was no evidence of intrinsic or extrinsic mass effect noted and no evidence of disc herniation was seen. (Tr. 287). There was no evidence of significant epidural scarring noted either. (Tr. 287).

Dr. Bess also noted, in office notes dated November 1, 2007, that the "severity of chronic illnesses has otherwise remained stable and there was no severe sequela." On February 5, 2008, Claimant indicated that his symptoms have "waxed and waned." (Tr. 296, 303, 324). On April , 2008, Claimant presented complaining of trauma to his right bicep which occurred while doing some work. (Tr. 299). On May 21, 2008, Claimant "is maintained on short acting narcotics and long acting narcotics with variable pain control." (Tr. 305). Claimant "wants to continue as is and is compliant with prescribed treatment with no evidence of suspicious behavior. All in all better than previous with pain control." (Tr. 305, 307). Claimant also had "good pain control." (Tr. 307, 309, 311, 324). Dr. Bess also noted that Claimant "has improved pain since got TENS unit; it helps lots." (Tr. 313).

On various dates from December 2007 to June 2008, Claimant presented at the Center for Pain Management. Claimant's medical records stated the following relevant medical notes: Claimant found "DiscTRODE helped, but Claimant's pain resurfaced when he returned to work." (Tr. 275-279). Claimant noted improvement in his neuropathic pain complaints from

Claimant's use of Lyrica. (Tr. 275-279). A recent CT myelogram of Claimant's lumbar spine revealed excellent position and alignment of his posterior fusion at L4, L5 and S1. (Tr. 275-278). While Claimant's lumbar neural canal and neural foramina were well maintained. (Tr. 275-279). Claimant was advised that 100% pain relief is not a realistic expectation and Claimant understood. (Tr. 275-279). Claimant deferred spinal cord stimulation. (Tr. 276-279).

D.    Testimonial Evidence

Testimony was taken at the hearing held on February 9, 2009. The following portions of the testimony are relevant to the disposition of the case:

Claimant testified that he last worked in the year 2006 at Prostainless which is a manufacturer of custom kitchen equipment. (Tr. 36). Claimant stated he had been doing this type of work for 30 plus years indicating his various roles within the business ranged from "installing," "[t]aking the equipment to the job sites," "quality control inspector," "shop foreman." (Tr. 36). Claimant testified he was no longer able to work due to "extreme back pain, groin pain," and "numbness in the legs." (Tr. 37).

Claimant indicated he underwent back surgery which entailed the fusion of L4 and L5 in Claimant's spinal cord with permanent fixtures. (Tr. 38). Claimant stated the surgery success was minimal in that Claimant no longer suffered from severe groin pain but that his back pain increased. (Tr. 38). Claimant additionally stated that he can no longer feel his feet after the surgery and that he has difficulty lifting things because Claimant will "get a sharp pain in it." (Tr. 38-39). Claimant admitted he "can do the bending and twisting" and that he has been told by a doctor to avoid "heavy lifting," "pushing," and "any pulling." (Tr. 39). When questioned about a specific weight/lifting restriction, Claimant stated he did not "know if they put a, a

12

number on it" but that "[Claimant's doctors] said it's kind of a common sense thing." (Tr. 39).

Claimant's daily activities since 2006 were testified to as follows: "feel all my farm animals," "fill up the watering troughs," visiting with "our neighbors...[to help] them...with some odds and ends." (Tr. 40).  Claimant testified that everyday he had to lie down some for a half hour on a good day and for most of the day on "not so good days." (Tr. 40).  Claimant indicated he was taking morphine, percocets, a cholesterol pill and aspirin. (Tr. 40).  Additionally, Claimant stated he sees both his primary care provider, Dr. Bess, as well as a pain management center. (Tr. 41).  Claimant also admitted to helping his neighbor "do some drywall work...for about a half hour" before having to stop due to pain. (Tr. 47).

Claimant indicated he did not graduate high school and completed the 10th grade. (Tr. 41).  Claimant testified that his reading and writing are both "very poor" and that he managed at work by asking his wife for help "if [Claimant] needed something or wasn't sure how to spell something." (Tr. 42).  Claimant has not obtained his GED nor has he ever attempted to do so. (Tr. 41).  Claimant testified that his wife manages the family finances and income tax matters but that Claimant, himself, is "pretty good with numbers." (Tr. 42-43).  Additionally, Claimant has not had any vocational training. (Tr. 43).

In terms of Claimant's symptoms as of February 2009, Claimant complained of shortness of breath and constant back pain. (Tr. 44).  Claimant contended that "the weather controls [Claimant] a lot" in that his bones would start to ache when it was going to rain. (Tr. 45).  Claimant stated a "good day" for pain is when Claimant need only take two Percocets and a "bad day is when [Claimant] take[s] all four or if [Claimant has] to take five." (Tr. 45).  Claimant also testified to difficulty remembering. (Tr. 46).  Claimant wears a TENS unit to assist with

Claimant's back pain and can only sit in one position for about a half hour before having to change positions. (Tr. 47).

Claimant explained that he would not be able to do his previous type of work because Claimant "just wouldn't be able to keep up," and that Claimant "wouldn't be able to stand on the floor." (Tr. 48). A vocational expert, Mr. James Genou, testified at Claimant's hearing. The vocational expert (hereinafter "VE") testified Claimant's previous work would be characterized as follows: 1) quality control manager-exertional level of medium and skill level of skilled; and 2) shop foreman-exertional level of light and skill level of skilled. (Tr. 49-50). The ALJ posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual who would be able to perform a range of light work. Would require a sit/stand option. Could perform postural movements occasionally. Except could not balance or climb ladders, ropes or scaffolds. Should do all walking on level and even surfaces. Should not be exposed to temperature extremes, wet or humid conditions, or hazards. And should work in a job that requires minimal to no reading or writing.

(Tr. 50).

The VE testified that under a light exertional level, there were 88,000 national and 1,300 regional jobs available as a laundry worker and, with a sit/stand option, those numbers were reduced by half. (Tr. 50). Additionally, the VE stated there were 178,000 nation and 1,500 regional jobs available as a garment sorter which numbers would also be reduced due to the sit/stand option. (Tr. 50). At the sedentary level, the VE testified that 103,000 national and 2,100 regional jobs existed as a bench worker and 25,000 national and 900 regional jobs existed as a general sorter. (Tr. 50).

E.      Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life:

Claimant described his activities from the time he awoke until going to bed as follows:

> I get up brush teeth and shower. Get dressed, come downstairs and have coffee. Watch news, take medication. Might go outside to check the animals (cows, horses, goats and dogs). Check fence to make sure nothing has broken it. Try to fix if can alone. If need help, get Roxie. Put out round bales if needed. Come in, rest on sofa on some ice. Eat. Usually take a nap or watch tv. Take more medication, if needed. Try to piddle around some.

(Tr. 135).

Claimant indicated he does not have problems with his personal care but that he needs his wife to remind him to take his medications. (Tr. 137). Claimant does not prepare food or meals because his wife cooks. (Tr. 137). Claimant is able to wash dishes, ride a lawnmower or tractor and goes outside "as much as [my] back and weather will allow." (Tr. 137-38). Claimant can go outside alone and does drive. (Tr. 138). Claimant does shop in sporting good, farm supply and automobile parts stores but "not often" and "not long" because Claimant has "to push [a] cart so [Claimant] can lean on it." (Tr. 138). Claimant is unable to pay bills or use a checkbook but can handle a savings account and can count change. (Tr. 138). Claimant states he is unable to spell or write very well. (Tr. 138). Claimant indicated his hobbies are "hunting, fishing, watching Nascar, riding 4-wheeler, riding in Polaris Ranger" but that he "use[d] to do [Claimant's hobbies] more often than [Claimant] is able to now," but with "medicine [Claimant] can do some." (Tr. 139).

In terms of Claimant's social activities, Claimant stated he used to visit friends or go out

more often but that Claimant cannot stand to sit up or walk for very long. (Tr. 140).  Claimant

indicated he can lift 20-30 pounds, can walk up to 2-3 flights of stairs before his back aches, can

only sit or stand in place for a short period of time. (Tr. 140).  Claimant cannot bend, kneel or

squat without back pain and Claimant's medication decreases Claimant's memory, concentration

and completion of tasks. (Tr. 140).

Claimant states he does finish tasks he starts but that he cannot follow written

instructions well unless pictures are also provided. (Tr. 140).  Claimant is able to follow spoken

instructions when his wife or a friend reads to him. (Tr. 140).  Claimant gets along "fine" with

authority figures and has never been fired or laid off from a job because of problems getting

along with other people. (Tr. 141).  Claimant used a cane after having back surgery in September

2006, but Claimant does not now use a cane. (Tr. 141).

### III.  The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

Claimant contends the ALJ's decision is not supported by substantial evidence because

the Appeals Council did not properly consider new and material evidence that Claimant

submitted.  Claimant also argues the ALJ's credibility determination regarding Claimant was

improper because the ALJ substituted his personal political views and failed to mention

Claimant's pain management records.  Lastly, Claimant asserts the ALJ failed to give proper

weight to Claimant's treating physician opinions.  Specifically, Claimant contends the ALJ

misconstrued Claimant's use of prescription pain medications and the effect Claimant's pain had

on Claimant's ability to sustain work activity in a competitive work environment.

In opposition, Commissioner contends the Appeals Council did not error because no new,

additional or not otherwise previously submitted medical records were included with the letter Claimant contends is relevant. Additionally, Commissioner argues the ALJ's credibility determination was proper because, upon consideration of the evidence, the ALJ accommodated Claimant's impairments which were reasonably supported by the record. Lastly, Commissioner argues that the ALJ properly weighed Claimant's treating physician opinions.

B.    Discussion

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 664-65 (1988); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

### 1.    Appeals Council's Consideration of Additionally Submitted Evidence

Claimant argues that the Appeals Council's finding "that [Dr. Bess's letter] does not provide a basis for changing the ALJ's decision" was improper and a basis for remand. Specifically, Claimant contends the Appeals Council did not explain how it evaluated the additional evidence nor did it explain what weight it assigned to the evidence. Therefore,

Claimant asserts the "Court cannot conclude that the ALJ's decision was based on substantial evidence." See Pl.'s Mot. for Summ. J., Pg. 8 (Dkt. 15).

Commissioner argues to the contrary. Commissioner contends that the letter from Dr. Bess fails to "mention or discuss any new or updated examination findings or medical test or study results" but rather is "a letter obtained from a family physician to advocate on behalf on[sic] his patient to assist him in obtaining disability payments by expressing a conclusory feeling/opinion that [Claimant] was extremely limited and disabled." See Def.'s Mot. for Summ. J., Pg. 12-13 (Dkt. 17).

The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y Dept. Of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). Evidence is new, within the meaning of this section, if it is not duplicative or cumulative. Id. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). The Fourth Circuit Court of Appeals has decided that the Appeals Council does not need to engage in a detailed analysis of new evidence. Freeman v. Halter, No. 00-2471, 2001 WL 847978, at *2 (4th Cir. July 27, 2001); Hollar v. Comm'r, No. 98-2748, 1999 WL 753999, at *2 (4th Cir. Sept. 23, 1999).

The Court has reviewed and considered Dr. Bess's letter dated September 28, 2009 and finds Claimant's argument must fail. The Appeals Council, in its denial of Claimant's request for review, did not engage in extensive analysis. The Notice of Appeals Council Action simply identified what it considered, *i.e.* Claimant's "Representative Brief dated May 28, 2010 and

Claimant-supplied Evidence from Dr. Charles Bess, MD dated September 28, 2009 (1 page)"
and concluded the information did "not provide a basis for changing the Administrative Law
Judge's decision." (Tr. 2, 4). This, however, is not grounds for remand. The regulation
addressing additional evidence does not direct that the Appeals Council announce detailed
reasons for finding that the evidence did not warrant a change in the ALJ's decision. See Hollar
v. Comm'r of Soc. Security Admin., No. 98-2748, 1999 U.S. App. LEXIS 23121 (4th Cir. 1999);
Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting claim that Appeals Council
must "articulate its own assessment of [Claimant's] additional evidence" and instead finding
such argument "misconstrue[s] the function of the Appeals Council under the Secretary's
regulations."). Accordingly, Claimant's argument that "the Appeals Council had an affirmative
obligation to state the precise evidence of record which it considered to effectively rebut the
assessments of Dr. Bess" is without merit and, therefore, fails.

**2.      Correctness of the ALJ's Credibility Determination**

Claimant additionally argues the ALJ's credibility determination was fallible in that the
"ALJ substituted his personal political view that millions of workers go to work on a daily basis
with symptoms of both physical and mental limitations...." See Pl.'s Mot. for Summ. J., Pg. 10
(Dkt. 15). Claimant contends the ALJ's statement "was clearly a biased statement," which
requires remand because, essentially, it constitutes "'an alterable opinion–a closed mind on the
merits on the claimant's case.'" Id. (quoting Williams v. Chater, 915 F.Supp. 954, 961 (N.D.
Ind. 1996). Additionally, Claimant argues "the ALJ failed to further discuss the pain
management records which clearly documented that [Claimant's] daily activities were 'globally
limited and that [Claimant] was failing medical and interventional pain management.'" See Pl.'s

Mot. for Summ. J., Pg. 11 (Dkt. 15). Claimant asserts that the ALJ's failure to mention this evidence provides grounds for the Court to remand for further consideration. Lastly, Claimant argues Claimant's earnings of up to $90,000.00 a year is most telling of Claimant's credibility because "people do not walk away from high paying jobs to merely survive on a substantially reduced disability benefit." Id. at 11-12.

Commissioner argues Claimant's credibility challenge is without merit. Specifically, Commissioner contends Claimant chooses "to discuss the activities of a different claimant in a different case before a different court to challenge the ALJ's determination of [Claimant's] credibility rather than [Claimant's] activities in the case before the Court." See Def.'s Mot. for Summ. J., Pg. 14 (Dkt. 17). Commissioner asserts that the ALJ considered Claimant's "statements concerning the intensity, persistence and limiting effects of those symptoms," and "reasoanbly accommodated [Claimant's] impairments and limitations supported by the record." Id.

The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Under Craig, when a claimant alleges disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. Id. at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment." Id. at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements about his symptoms, in determining whether the claimant is disabled. Id. at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective

medical impairment could not reasonably be expected to cause the symptoms alleged.  Id.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c).

Accompanying factors are provided in SSR 96-7p that the adjudicator must also consider in addition to the objective medical evidence when assessing the credibility of an individual's statements.  These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)).  "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special

deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). "We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

The Court finds Claimant's argument that the ALJ's credibility determination was improper to be without merit. Contrary to Claimant's assertion, the record illustrates that the ALJ evaluated Claimant's symptoms in accordance with the two-part test in Craig, as well as, the SSR 96-7p factors. Under Craig, the ALJ first found that "[C]laimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25). Second, the ALJ "expressly" considered whether Claimant had "such an impairment" by devoting three pages of analysis to explain his reasoning supporting his finding. (Tr. 25-27).

In accordance with the factors set forth in SSR 96-7p, the ALJ examined the objective medical evidence, Claimant's daily activities, Claimant's work history and Claimant's statements concerning the limiting effects of his symptoms. First, the ALJ examined Claimant's alleged back pain and determined that there was "no evidence that this impairment is so severe as to preclude any and all work-related activity." (Tr. 25). The ALJ considered that Claimant underwent surgery for Claimant's alleged impairment stating that it "certainly suggests that the symptoms were genuine," but that the "record reflects that the surgery was generally successful." (Tr. 27). The ALJ continued by noting "[d]iagnostic imaging has shown excellent alignment,

and the [C]laimant has required no additional surgery." (Tr. 27).

Second, the ALJ discussed Claimant's daily activities and limiting effects of Claimant's symptoms, as reported by Claimant. The ALJ listed Claimant's reported daily activities as follows: "taking care of his own personal needs, checking on his animals (cows, horses, goats, and dogs), checking the fences, putting out round bales of hay, filling the watering trough with a hose, washing dishes, using a riding lawnmower and tractor, driving a motor vehicle, shopping for sporting goods, farm supplies, and automobile parts, counting change, watching racing on television, and participating in his hobbies of hunting, fishing and riding a 'four-wheeler' when his back did not hurt too bad." (Tr. 28). In analyzing Claimant's credibility, the ALJ determined Claimant's symptoms to be "somewhat exaggerated...especially in light of the [C]laimant's description of his daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 28).

Third, the ALJ considered Claimant's work history in the credibility finding and determined that while the ALJ "believes that [Claimant] does experience back, leg and groin pain from time to time" that Claimant does not experience such pain "to the frequency and severity alleged." (Tr. 28). The ALJ specifically references "[C]laimant's admitted ability to lift 20 to 30 pounds" and provides for the accommodation of work that required minimal to no reading "[a]lthough the record contains no objective evidence to support [C]laimant's allegation of limited ability to read and write." (Tr. 27).

Accordingly, the Court finds the ALJ's credibility analysis and ultimate determination to be proper and in line with the regulations. Claimant has failed to show the ALJ's credibility determination was "patently wrong" notwithstanding the ALJ's statement or "opinion about

millions of other people." See Pl.'s Mot. for Summ. J., Pg. 13 (Dkt. 15).  The ALJ considered the

evidence, determined Claimant's impairments were capable of causing some of Claimant's

alleged symptoms and provided reasonable accommodations.  While the ALJ must consider the

claimant's statements, he need not credit them to the extent they are inconsistent with the

objective medical evidence. Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).  Therefore, this

Court finds that the ALJ had more than a mere scintilla of evidence and appropriately discredited

Claimant's subjective statements regarding his pain and symptoms.

**3.      ALJ's Evaluation of Claimant's Treating Physician Opinions**

Claimant proffers a third argument in support of his Motion for Summary Judgment: that

the "ALJ improperly and without substantial evidence discounted and misconstrued treating

physician records and opinions...." See Pl.'s Mot. for Summ. J., Pg. 13-14 (Dkt. 15).

Specifically, Claimant contends the ALJ "misconstrued the [Claimant's] use of prescription pain

medications and the effect pain had on [Claimant's] ability to sustain work activity in a

competitive work environment 52 weeks a year." Id.

Commissioner argues "[c]ontrary to [Claimant's] assertion, the opinion of a treating

physician that a [Claimant] is disabled is not entitled to any special deference." See Def.'s Mot.

for Summ. J., Pg. 13 (Dkt. 17).  Commissioner directs the Court to the Social Security

Regulations which, Commissioner argues, provide "that even a treating physician's opinion

regarding a patient's disability under the Act or regarding residual functional capacity is not

entitled to any special weight."

All medical opinions are to be considered in determining the disability status of a

claimant.  20 C.F.R. §§ 404.1527(b), 416.927(b).  Courts evaluate and weigh medical opinions

pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist.  20 C.F.R. § 404.1527(d)(2).  Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight."  Id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). The opinion and credibility of claimant's treating physician is entitled to great weight but may be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984).

Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. §416.927(d)(2).  See Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).  To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.

42 U.S.C. § 423(d)(1), (3); Heckler, 461 U.S. at 461; 20 C.F.R. § 404.1508; Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Claimant's argument that the ALJ did not afford Claimant's treating physician's opinion proper weight is unpersuasive. While Claimant is correct that "the opinion and credibility of claimant's treating physician is entitled to great weight," the opinion of Dr. Bess, Claimant's treating physician, may be disregarded if persuasive contradictory evidence exists. See Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984). The Court finds that the ALJ had "persuasive contradictory evidence" to decline to afford controlling weight to Claimant's treating physician's opinion. Upon review of Dr. Bess's medical notes, Dr. Bess's opinion appears to be well-supported by medically acceptable techniques. There is, however, other substantial evidence in Claimant's case record which stands in stark contrast to Dr. Bess's opinion. For example, Dr. Bess reported Claimant did suffer from back pain but Claimant was able to control his pain with various medications. (Tr. 26-27). The Court finds most telling of contradictory evidence to be Claimant's self-reported activities in which Claimant engages. Claimant reported being able to do various outdoor related chores such as "putting out round bales of hay...and using a riding lawnmower and tractor." (Tr. 28). Although the ALJ provides a more detailed analysis regarding why Dr. Bess's opinion is not afforded controlling weight, the Court finds Claimant's daily activities, alone, provide a sufficient basis for the ALJ to decline Dr. Bess's opinion. Accordingly, Claimant's argument in this regard must fail. Moreover, further consideration of Dr. Bess's opinions and records is unnecessary. The Court finds the ALJ's assessment of Dr. Bess's opinion to be proper given the other contradictory evidence in Claimant's medical records, testimony and daily activities.

## IV.  Recommendation

For the foregoing reasons, I recommend that:

1.      Claimant's Motion for Summary Judgment be **DENIED** because the Appeals Council has no affirmative duty to articulate its own assessment of Claimant's additionally submitted evidence, the ALJ's credibility determination was supported by substantial evidence and because affording controlling weight to Claimant's treating physician's opinion was inappropriate given the existence of substantial contrary evidence in the case record.

2.      Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days of the date of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: April 18, 2011

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE